UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARIUS HUNTINGTON, #702638,

       Petitioner,

                                      Case No. 12-CV-14358

v.

                                      HON. MARK A. GOLDSMITH

KENNETH ROMANOWSKI,

       Respondent.

_____/

**OPINION AND ORDER (1) DENYING THE PETITION FOR WRIT OF HABEAS CORPUS (Dkt. 1), (2) DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND (3) GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS**

## I.  INTRODUCTION

Petitioner Darius Huntington, currently confined at the Lakeland Correctional Facility in Coldwater, Michigan, filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. 1), in which he challenges his conviction for first-degree felony murder, Mich. Comp. Laws § 750.316; possession of a firearm by a felon, Mich. Comp. Laws § 750.224f; and possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b. Pursuant to Mich. Comp. Laws § 769.10, Petitioner was sentenced as a second felony habitual offender to life imprisonment without eligibility for parole for his first-degree murder conviction; to two years to seven years and six months imprisonment for his felon in possession of a firearm conviction; and to two years imprisonment for his felony firearm conviction. For the reasons stated below, the Court denies the petition for writ of habeas corpus and declines to issue a certificate of appealability. However, the Court grants Petitioner leave to appeal in forma pauperis.

## II.  BACKGROUND

Petitioner was convicted following a jury trial in the Muskegon County Circuit Court. This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review, pursuant to 28 U.S.C. § 2254(e)(1). See Wagner v. Smith, 581 F.3d 410, 413 (6th Cir. 2009).

> The evidence showed that on June 19, 2009, the victim, Willie Rice, was cooking dinner for his brother and three friends. The victim was standing up in the kitchen, and the rest of the men were sitting. Defendant and another man walked into the home. Defendant was wearing a bandana-type mask covering his face from the nose down, and dark clothing. Defendant immediately indicated that "this is a stickup," and as the victim turned around to face defendant, defendant shot the victim in the torso. The other men ran into a bedroom. Defendant and his accomplice followed the men and demanded money. The men emptied their pockets and defendant and co-defendant then left. Emergency personnel were immediately contacted but the victim died later that night from the gunshot wound.
>
> Officers arrested defendant based in part on interviews with defendant's ex-girlfriend, Cynoda Sparkling, and Sparkling's friend, Jasmine Flowers. Sparkling initially lied to police and provided an alibi for defendant, but later went back to the police and provided a different version of events. She told officers that she was not with defendant the day or night of the murder. Sparkling testified that late at night on the day after the murder she picked defendant up and he confessed to the robbery and shooting. Flowers testified that she was in the car when Sparkling picked defendant up, and that defendant said he was wrestling with the victim and the gun accidentally fired. During cross examination, Sparkling admitted defendant told her that he accidentally shot the victim. However, all four eyewitnesses testified that there was no struggle over the gun, and that defendant shot the victim almost immediately upon entry into the home.

People v. Huntington, No. 295474, 2011 WL 1600502, at *1 (Mich. Ct. App. Apr. 28, 2011). Petitioner's conviction was affirmed on appeal, id. at *5, and the Michigan Supreme Court denied Petitioner's application for leave to appeal that judgment. People v. Huntington, 804 N.W.2d 330 (Mich. 2011).

Petitioner seeks a writ of habeas corpus on the following grounds:

> i. "The trial court reversibly erred by (1) refusing to instruct the jury on the lesser included offenses of second degree murder and manslaughter and by (2) giving the jury an instruction on malice that lessened the prosecution's burden of proof."
>
> ii. "Defendant must be permitted [] the right to a fair jury trial under the Six[th] Amendment, because these proceeding took place at the time when Defendant was denied a lesser offense of murder voluntary manslaughter CJI2d 16.9, his counsel was constitutionally ineffective when he failed to demand a direct[ed] verdict."

Pet. at 5, 7 (cm/ecf pages).

### III. STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405-406 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme

3

Court] to the facts of a prisoner's case." Id. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411.

The Supreme Court has explained that a "federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). Thus, the AEDPA "imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (quotation marks and citations omitted). A "state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 131 S. Ct. 770, 786 (2011) (quotation marks). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. (citation omitted). Furthermore, pursuant to section 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. Id. Habeas relief is not appropriate unless each ground that supported the state-court's decision is examined and found to be unreasonable under the AEDPA. See Wetzel v. Lambert, 132 S. Ct. 1195, 1199 (2012).

"If this standard is difficult to meet, that is because it was meant to be." Harrington, 131 S. Ct. at 786. Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from re-litigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no

4

possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. Id. Indeed, section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." Id. (quotation marks omitted). Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." Woodford v. Viscotti, 537 U.S. 19, 24 (2002). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state-court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 131 S. Ct. at 786-787.

A state court's factual determinations are presumed correct on federal habeas review. See 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. Warren v. Smith, 161 F.3d 358, 360-361 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011).

## IV. ANALYSIS

### A. Petitioner's Substantive Claims

#### 1. Claim 1: Jury Instruction Claims

Petitioner alleges that the trial court should have instructed the jury on the lesser-included offenses of second-degree murder and manslaughter. Petitioner further claims that the trial court erred in defining "malice," an element of felony murder, resulting in a lessening of the prosecution's burden of proof. Part of Petitioner's second claim alleges that he was denied a fair trial when the trial court failed to instruct on the lesser-included offenses of second-degree

murder and manslaughter. Because this part of Petitioner's second claim is interrelated to Petitioner's first claim, the Court will address this part of Petitioner's second claim with his first claim together.

Respondent contends that Petitioner's claims are based entirely on state law and that there is no clearly established federal law that applies to this claim. The Court agrees.

The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack upon the constitutional validity of a state-court conviction is even greater than the showing required in a direct appeal. "The question in such a collateral proceeding is whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even universally condemned," and an omission or incomplete instruction is less likely to be prejudicial than a misstatement of the law. Henderson v. Kibbee, 431 U.S. 145, 154-155 (1977). The challenged instruction must not be judged in isolation but must be considered in the context of the entire jury charge. Jones v. United States, 527 U.S. 373, 391 (1999). Further, any ambiguity, inconsistency, or deficiency in a jury instruction does not, by itself, necessarily constitute a due-process violation. Waddington v. Sarausad, 555 U.S. 179, 190 (2009). It is not enough that there might be some "slight possibility" that the jury misapplied the instruction. Id. at 191. Federal habeas courts "do not grant relief, as might a state appellate court, simply because the instruction may have been deficient in comparison to" a model state instruction. Estelle v. McGuire, 502 U.S. 62, 72 (1991). In determining whether to grant habeas relief to a habeas petitioner based upon an erroneous jury instruction, the reviewing court must determine whether that instruction had a substantial and injurious effect or influence on the jury's verdict. See Hedgpeth v. Pulido, 555 U.S. 57, 61-62 (2008); California v. Ray, 519 U.S. 2, 5 (1996)

(same).

The United States Supreme Court has declined to determine whether the Due Process Clause requires that a state trial court instruct a jury on a lesser-included offense in a noncapital case. See Adams v. Smith, 280 F. Supp. 2d 704, 717 (E.D. Mich. 2003) (citing Beck v. Alabama, 447 U.S. 625, 638 n. 14 (1980)). The Sixth Circuit has interpreted Beck to mean that "the [federal] Constitution does not require a lesser-included offense instruction in non-capital cases." Campbell v. Coyle, 260 F.3d 531, 541 (6th Cir. 2001), cert. denied, 535 U.S. 975 (2002). Thus, a state trial court's failure to give the jury an instruction on a lesser included offense in a non-capital case is not contrary to, or an unreasonable application of, clearly established federal law as required for federal habeas relief. See Smith, 280 F. Supp. 2d at 717. As such, the failure of a state trial court to instruct a jury on a lesser-included offense in a noncapital case is not an error cognizable in federal habeas review. Bagby v. Sowders, 894 F. 2d 792, 797 (6th Cir. 1990); see also David v. Lavinge, 190 F. Supp. 2d 974, 986 n. 4 (E.D. Mich. 2002) (noting that "the failure to give a jury instruction on a lesser-included offense is not a character and magniture to be cognizable on federal habeas corpus review").

Although Petitioner was originally charged with first-degree murder, which carries a sentence of life imprisonment without parole, Petitioner was not facing a capital conviction within the meaning of Beck that would entitle him to a jury instruction on any lesser-included offenses. In Scott v. Elo, the Sixth Circuit held that a criminal defendant who had been convicted of first-degree murder in Michigan and had been sentenced to life imprisonment without parole was not entitled to habeas relief based upon the trial court's failure to instruct on the lesser offense of involuntary manslaughter. 302 F.3d 598, 606 (6th Cir. 2002). In so ruling, the Sixth Circuit characterized the defendant's first-degree murder charge as being a conviction

for a noncapital offense. Id. Moreover, several other circuits have concluded that cases in which a defendant receives a sentence of life imprisonment without parole instead of the death penalty should be treated as a noncapital case, as opposed to a capital case, for determining whether due process requires that a trial court is required to instruct jurors on lesser-included offenses. See, e.g., Creel v. Johnson, 162 F.3d 385, 390 (5th Cir. 1998) (holding "that a case in which the death penalty is sought but not imposed ultimately is classified as a noncapital case for the purpose of a Beck analysis"), cert. denied, 526 U.S. 1148 (1999); Pitts v. Lockhart, 911 F.2d 109, 112 (8th Cir. 1990) (holding that a case in which the defendant receives a life sentence instead of the death penalty "should be treated as [a] noncapital case[]"), cert. denied, 501 U.S. 1253 (1991); Rembert v. Dugger, 842 F.2d 301, 303 (11th Cir. 1988) (finding "no case in which the Beck principle has been applied when a defendant has received a life sentence on a capital conviction"), cert. denied, 488 U.S. 969 (1988); Trujillo v. Sullivan, 815 F.2d 597, 602 (10th Cir. 1987) ("Analytically, the capital case in which the death penalty is not ultimately imposed appears to be more like the noncapital case than the death sentence case in which eighth amendment values are clearly implicated; unless the defendant is actually sentenced to death, the eighth amendment is not directly implicated."), cert. denied, 484 U.S. 929 (1987). Therefore, the Court finds that Petitioner is not entitled to relief on his claim that the trial court failed to instruct the jurors on lesser-included offenses.

In the second part of his first claim, Petitioner argues that trial court erred by not giving the standard jury instruction in defining "malice," an element of felony murder. The Michigan Court of Appeals rejected this claim:

> Defendant also challenges the trial court's decision to give an amended jury instruction in lieu of the standard jury instruction regarding the definition of malice. The trial court instructed the jury that it must find defendant "had one of these three states of

8

>mind: He intended to kill, or he intended to do great bodily harm to [the victim], or he acted in wanton and willful disregard of the likelihood that the natural tendency of such behavior was to cause death or great bodily harm." Defendant argues the standard criminal jury instruction should have been given instead. The standard criminal jury instruction defining malice states in relevant part: "that defendant ... intended to kill, or he intended to do great bodily harm to [name deceased], or he knowingly created a high risk of death or great bodily harm knowing that death or such harm would be the likely result of his actions."CJI2d 16.5(3). The use of the Michigan Criminal Jury Instructions by a trial court is not mandatory. People v. Petrella, 424 Mich. 221, 277; 380 N.W.2d 11 (1985). The trial court has discretion to decide whether to use a standard jury instruction. Heikkinen, 250 Mich. App at 327. "There is no error requiring reversal if, on balance, the instructions fairly present the issues to be tried and sufficiently protect the defendant's rights." Id. The definition of malice given by the trial court comports with the definition of malice set forth in People v. Aaron, 409 Mich. 672, 728; 299 N.W.2d 304 (1980). Thus, we conclude that where the trial court instructed the jury on the definition of malice as set forth in an opinion of our Supreme Court that has not been overruled, the trial court did not abuse its discretion when it declined to use the standard jury instruction.

Huntington, 2011 WL 1600502, at * 4.

Federal courts are bound by the state courts' interpretation of their own laws. See Mullaney v. Wilbur, 421 U.S. 684, 690-691 (1975). The nature of a particular jury instruction that is given is a matter of state law, and a federal court is not at liberty to grant a writ of habeas corpus simply because the federal court finds the state court's decision was incorrect under state law. Newton v. Million, 349 F.3d 873, 879 (6th Cir. 2003). Because the Michigan Court of Appeals found that the instruction as given by the trial court accurately reflected Michigan law regarding the legal definition of malice, this Court must defer to that determination and cannot question it. See Seymour v. Walker, 224 F.3d 542, 558 (6th Cir. 2000). Therefore, the Court finds that Petitioner is not entitled to habeas relief on his jury instruction claims.

### 2. Claim 2: Fair Trial and Ineffective Assistance of Counsel Claims

9

Petitioner's second claim alleges that he was denied a fair trial when the proceedings took place after the trial court denied instruction on the lesser-included offenses of second-degree murder and voluntary manslaughter. Petitioner also alleges that trial counsel was ineffective for: (i) failing to request an impeachment hearing on the alibi witness, Ms. Cynoda Sparkling; (ii) failing to acknowledge Petitioner's request for a directed verdict; and (iii) failing to object to improper, inflammatory remarks made by the prosecution. See Pet'r Supp. Br. on Appeal at 44 (cm/ecf page) (Dkt. 1-1).

As discussed above, the Court finds that the first part of Petitioner's claim is without merit. The second part of Petitioner's claim alleges the ineffective assistance of counsel for the three reasons stated above in Petitioner's supplemental brief on appeal.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two-prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney "was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland v. Washington, 466 U.S. 668, 687 (1984). "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-688. In so doing, the defendant must overcome a "strong presumption" that counsel's behavior lies within the "wide range of reasonable professional assistance." Id. at 689. In other words, Petitioner must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. Id. at 689.

Second, the defendant must show that such performance prejudiced his defense. Id. at 687. To demonstrate prejudice, the defendant must show that "there is a reasonable probability

that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "Strickland's test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" Storey v. Vasbinder, 657 F.3d 372, 379 (6th Cir. 2011) (quoting Harrington, 131 S. Ct. at 792). The Supreme Court's holding in Strickland places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a "reasonable probability" that the result of the proceeding would have been different but for counsel's allegedly deficient performance. See Wong v. Belmontes, 558 U.S. 15, 27 (2009).

Petitioner first claims that trial counsel failed to object to the testimony given by Sparkling, alleging that Sparkling was lying on the stand. Petitioner claims that trial counsel also failed to move for an impeachment hearing and failed to raise a defense. Pet'r Supp. Br. on Appeal at 44 (cm/ecf page). Within this claim is an incompetency claim, which is conclusory, and which Petitioner never raised in the state court.

The Michigan Court of Appeals found that trial counsel was not ineffective for failing to object "[b]ecause one thinks a witness is lying. The veracity of a witness is a matter for the trier of fact to discern." Huntington, 2011 WL 1600502, at *5 (emphasis in original).

Petitioner has failed to show how he was prejudiced by counsel's alleged failure to object to Sparkling's testimony, or by failing to ask for an impeachment hearing. Counsel was able to elicit testimony from Sparkling and "asserted at trial that these witnesses were not truthful and had invented the statements purportedly made by defendant." Id. at *4. Counsel indicated that Sparkling had lied to the police, see 10/27/09 Trial Tr. at 26-32 (Dkt. 8-8), and had a motive to lie at trial, based on Petitioner ending their relationship and beginning a new one with a different woman. Id. at 30-31, 34. Counsel adequately impeached the credibility of Sparkling, and

11

brought out a motive for the witness to fabricate these allegations against the Petitioner.

"Courts generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel." Dell v. Straub, 194 F. Supp. 2d 629, 651 (E.D. Mich. 2002). "Impeachment strategy is a matter of trial tactics, and tactical decisions are not ineffective assistance of counsel simply because in retrospect better tactics may have been available." Id.

In the present case, defense counsel's performance did not constitute ineffective assistance of counsel, where the record shows that counsel carefully cross-examined the prosecution witnesses and, in his closing argument, emphasized the inconsistencies and weaknesses in the testimony of the various witnesses, as well as their possible motivations for fabricating these charges against Petitioner. See Krist v. Foltz, 804 F. 2d 944, 948-949 (6th Cir. 1986); Millender v. Adams, 187 F. Supp. 2d 852, 872 (E.D. Mich. 2002) (same).

Moreover, as the Michigan Court of Appeals indicated in its opinion, there was no basis under Michigan law for counsel to raise an objection merely because he believes a witness is lying. Trial counsel was not ineffective for failing to raise a futile objection. United States v. Johnson, 9 F. App'x 373, 374 (6th Cir. 2001).

Petitioner next alleges that trial counsel was ineffective for failing to demand a directed verdict. The Michigan Court of Appeals found that there was no likelihood that a directed verdict would have been granted:

> Defendant also claims counsel was ineffective for failing to move for a directed verdict. However, based on the evidence admitted at trial there was no likelihood that a directed verdict would have been granted by the trial court. Counsel does not have an obligation to bring a frivolous or meritless motion. Finally, defendant makes other statements as to how counsel was deficient, specifically that counsel failed to object to improper and inflammatory remarks. Defendant fails to cite the record to

> support this claim or to otherwise explain it. He has thus failed to establish a factual predicate for the claim and has abandoned it. Following our examination of all of defendant's claims of ineffective assistance of counsel, we find that defendant has failed to convince this Court that trial counsel's performance fell below an objective standard of reasonableness.

Huntington, 2011 WL 1600502, at *5 (citations omitted).

Defense counsel's failure to move for a directed verdict based on the insufficiency of evidence was not ineffective assistance of counsel because there was sufficient evidence to support Petitioner's convictions. See Maupin v. Smith, 785 F.2d 135, 140 (6th Cir. 1986) ("Given our conclusion that there was sufficient evidence to support Maupin's conviction, we conclude that counsel's alleged error did not result in such prejudice as to meet the second part of the Strickland standard.").

Lastly, Petitioner contends that trial counsel was ineffective for failing to object to inflammatory remarks made by the prosecutor, but Petitioner fails to specify which comments were inflammatory or why such remarks were improper. Conclusory allegations of prosecutorial misconduct pertaining to inflammatory remarks fail to state a claim upon which habeas relief can be granted. See Johnson v. Renico, 314 F. Supp. 2d 700, 710 (E.D. Mich. 2004) ("Conclusory allegations do not state a claim of prosecutorial misconduct"). Because Petitioner's prosecutorial misconduct claim is conclusory and unsupported, the Court finds that Petitioner is not entitled to habeas relief on this part of his second claim. Likewise, conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. See Workman v. Bell, 178 F.3d 759, 771 (6th Cir. 1998) (finding that the petitioner's counsel was not ineffective, as the petitioner's allegations were "merely conclusory").

Accordingly, the Court concludes that Petitioner's second claim is without merit

**B. Certificate of Appealability**

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. See Slack v. McDaniel, 529 U.S. 473, 484 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 537 U.S. at 327. In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. Id. at 336-337. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254; Castro v. United States, 310 F.3d 900, 901 (6th Cir. 2002).

Having considered the matter, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right. Accordingly, a certificate of appealability is not warranted in this case.

### C. Leave to Proceed In Forma Pauperis

Although the Court denies a certificate of appealability to Petitioner, the standard for granting an application for leave to proceed in forma pauperis ("IFP") is a lower standard than the standard for certificates of appealability. Foster v. Ludwick, 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002) (citing United States v. Youngblood, 116 F. 3d 1113, 1115 (5th Cir. 1997)). Whereas a certificate of appealability may only be granted if a petitioner makes a substantial

showing of the denial of a constitutional right, a court may grant IFP status if it finds that an appeal is being taken in good faith. Id. at 764-765; 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a). "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. Foster, 208 F. Supp. 2d at 765. Although jurists of reason would not debate the Court's resolution of Petitioner's claims, the issues are not frivolous; therefore, an appeal could be taken in good faith and Petitioner may proceed IFP on appeal. Id. at 764-765.

## V. CONCLUSION

For the reasons set forth above, the Court denies the petition for writ of habeas corpus (Dkt. 1). The Court declines to issue a certificate of appealability. However, the Court grants Petitioner leave to appeal in forma pauperis.

SO ORDERED.

Dated: February 27, 2015
Detroit, Michigan

s/Mark A. Goldsmith
MARK A. GOLDSMITH
UNITED STATES DISTRICT JUDGE

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 27, 2015.

s/Johnetta M. Curry-Williams
CASE MANAGER